## MACHAMER et v WARNER

Ohio Appeals 3rd Dist, Wyandot Co

No 113. Decided Jan 31, 1929

Niles & Peters, Tiffin, F. J. Stalter, Upper Sandusky, for Machamer.

Guthrey, Strelitz & Guthrey, Marion, A. K. Hall, Upper Sandsuky, for Warner.

HUGHES, J.

If it be conceded that a relationship between a juror and plaintiff was at the time known to such juror and that she knowingly concealed the fact upon her voire dire examination, there would be little room to doubt the right of the defendants to have a new trial, because under such circumstances it would show a wilful endeavor upon the part of the juror, (using the words of one of the distinguished jurists of our Supreme Court), to worm herself in on the jury when a probable partiality for the plaintiff existed.

The evidence on the motion for new trial shows that there was an organization known as the Ulrich Family Reunion which had been in existence for practically twenty years. The juror Mable Hanum and her husband attended these reunions, but not in recent years. The juror Carrie Ulrich, however, was shown to have had a very active relationship with this organization covering a period of the last ten or fifteen years. The plaintiff himself, and this juror, had acted on committees at the same time; the father of the plaintiff was president at some of these times; the husband of the juror was on committees and participated in the activities of the organization; the daughter of the juror was secretary of the organization a part of these times; and Carrie Ulrich attended these reunions, acting on committees, sometimes jointly with the plaintiff himself, or at least while he was acting on some other committee or his father was acting as president. True, she says in her affidavit that she did not know at the time of the trial, that she was related to plaintiff. But, when these undenied facts touching her own activities with this Ulrich Reunion at the same time the plaintiff and his relatives were active in the organization, are taken into consideration, the inevitable conclusion is that Carrie Ulrich did know at the time of her examination touching her qualification as a juror, that she was actually related in some way, either by blood or affinity, to plaintiff. Scarcely any prudent lawyer would have permitted to remain on the jury, a person having such relationship and such intimate past contact with plaintiff, as this juror is shown to have had. The defendants had left, a peremptory challenge. If after these facts had been disclosed by honest answers from the juror, the trial judge had failed to find a suspicion of prejudice or partiality, then the defendants could exercise their preemptory challenge and remove this juror from the panel.

We feel that defendants have not had such a fair and impartial jury as is guaranteed by our constitution, to try their case, and therefore this ground of error is sustained.

The reasoning of the case of **Bershiet v. Traction Company, 3 Nisi Prius (N. S.) 575,** supports this conclusion.

The second ground of error, that is, that Carrie Ulrich had had some conversations with a bystander, indicative of a prejudice, or at least a conduct that was improper, was a fact to be determined by the trial court on the motion for a new trial. The witness who testified about this conversation, gave one version, while Carrie Ulrich gave another. According to her evidence, she was approached by a remark from the bystander. The fact upon this issue was for the trial court to determine, and having heard the evidence and come to the conclusion that he did, we are unable to say that he was manifestly wrong in this conclusion, and hence this error assigned is not available.

The third error complained of concerning the testimony permitted to go to the jury from the various witnesses telling what they saw in a lost X-ray picture, is of little substance, in our judgment. We see no good reason why a lay witness should not be permitted to testify to what he actually saw in the lost X-ray photogaph. The weight of his evidence is involved but not the competency. The jury had a right to take this class of evidence for what it was worth, and the opposing party had the right to show anything competent and material to prove that what he had testified to was not a correct interpretation of the photograph.

Before Judges Crow, Hughes and Justice.